Organizing for display. Mr. Whitman? May it please the court. In granting QWEST's motion for summary judgment of non-imprisonment of the EBC system, the district court heard by applying the relevant claim language, in this case it was the so-called organizing and deforming language, in a manner that completely disregards the actual interpretation of that language set forth in the claim construction order. In that order, the court held that the language organizing into a format for storage, manipulation, and display on a personal computer simply means that the summary reports are organized into a format that is readable by software on a personal computer. In other words, it has to be PC compatible. And it's undisputed that QWEST's ASCII.txt files are indeed readable by software on a personal computer. In fact, that's why they're converted by QWEST into text files, so that they can be read on a personal computer. Now, a text file is a standard file used by personal computers. Virtually any text editor, such as Word or Notepad, can open a text file and read that file. Mr. Wigman, just as a matter of procedure, if we affirm on this organizing a format for display limitation, are there any remaining issues besides costs that we have to deal with? Well, there's the... Do we have to deal with anything else? Well, there's also the QWEST logic system that was held to be non-differentiating by the court. But will we have disposed of all claims and all questions if we affirm on this one? If you affirm on both, there are no remaining questions other than costs. That's correct. But our position is that the court heard both cases. I understand that. The system and the logic system. Now, returning to the EEC system, the district court having defined the organizing language in terms of PC readability of the software, it was just plain error for the court then to require any further evidence that the text files are beyond that necessary, or further functionality for displaying the text files beyond that necessary, to put them into a format in which they are readable by software on a PC. Now, the court's finding that these .txt files cannot be displayed until they interact with the .fmt file in the schema within the client application is totally contrary to the record. In fact, QWEST doesn't argue that. In fact, QWEST has admitted to the contrary. They've conceded. When the claim says it's organizing a format for display, why isn't that format the QWEST software format? Isn't that the milieu, the environment, isn't that where we're working? Well, what happens, Your Honor, is that the data is processed at the back end, at least in the patents, on a mainframe format, which is not readable by, at least in 1989, patents files. It's not readable by software on a PC. It hasn't been converted into PC software. And that's all the claim is talking about. I'm talking about PC format. The claim says organize it into a format for storage and decimation and display. That's sort of a catch-all phrase. So, your argument is if I access QWEST to get my bill, if it shows up in a corner in fine print that I even can't read, but it's displayed there, that's enough. That is enough, yes, Your Honor. The QWEST should not be permitted to avoid infringement simply because they have chosen to send the format information to their clients in a file separate from the data file. The FFMD file simply contains the column ending information, the names of the columns in the data file, the telephone number, the date, the time of the call, so forth. And QWEST has decided, perhaps for convenience, to send them in separate files rather than in one big file that's hard to translate. They send them in two separate files, they wrap it up in a zip file, and they send it to the client. Now, that is not a basis for avoiding infringement. The files have been converted into a format in which they are readable by software on a PC. That's the definition that the court construed for that phrase, and there's no question that the text files meet that definition. And they are readable. In fact, this court, in its prior decision on page 15 of the slip of the pen, noted that QWEST has argued that the text files can be read, the files can be read with or without the software. They can be viewed, their reports, customers can view the reports without the software. Now, obviously, the column endings are desirable, but you have to look at the claim language. And, furthermore, the specifications instructive in this regard. Because in the preferred embodiments, the data files are not provided with commenting information until they go into the database on the PC. If we don't agree with you that the use of passcode makes the specific character of the summary report, then logic is out, right? That's correct, Your Honor. The basis for... The EBC would still be on the table based on on-demand and customization for third-party software. That's correct. And EBC is the main... The logic was put out, and it was surpassed by EBC in 2002. So, EBC is the main format that is used now. There are some logic customers that continue. But if we were to reject your argument, I'm just trying to make sure I understand the different arguments as they apply to the different systems, then all that's left is EBC. And the only two arguments there are when people use the on-demand feature or when they seek the customization of the data file. So, that would narrow your universe of damages quite substantially, wouldn't it? You wouldn't be entitled to all EBC use at that point, right? Well, we would be. What you're saying, I think, if I understand correctly, Your Honor, is that if you agree with the court with respect to the passcodes, then logic is out, but we still have EBC. Now, if I can address the logic issue and the passcode issue, this court, in its prior decision, held that the language specified by the user is broad language. And it arguably reads on so-called prior art, co-betraced prior art, that was asserted by the defendants in the prior proceedings. And it simply follows, and it seems logical, that if a customer ancillary to the act of subscribing to the service specifies, requests, calls its account representative, and says, we'd like to have our reports include PAC data, then any reports still generated must, by any definition, be specified by the user. This court held that the mere act of subscribing to the service causes the back-end processing to generate the requisite summary reports. So if the customers, when they sign up, say, we want PAC codes, well then, those reports have to be, have to meet the definition of being specified by the user. Can the TXT files be used by themselves in Quest client application software? Well, they can be loaded into the database, and they can be viewed. And Quest has their own 36 witnesses, the TXT files can be used without the software. Well, of course, they can be displayed just generally on a computer. The question, though, is whether they can be used by themselves in the Quest application software. Well, they can be loaded. And I would respectfully direct the Court's attention to pages 4272 through 4276, where Dr. Grimes testifies in detail about how the TXT files can be loaded into the Quest database, even without the FMT file. Now, I agree with you, Your Honor. It's certainly more desirable for users to have the names of the problematics. But that's not what the claim requires. And if we had known, and I say this in my rebuttal time, and I'll try to conclude, if we had known that the Court was going to go in this direction, we would have had supplemental information from our experts about how this could be done, and at the very minimum, that it's an equivalent. And since we were not on notice that the Court was going to construe this language or apply this language in a manner different from what it had interpreted in the claim construction order, we were certainly prejudiced in that regard. So at a minimum, we would submit that the judgment should be vacated as not in compliance with Rule 56. And if I may... Thank you, Mr. Wigman. We'll keep the rest of your rebuttal time, Mr. Belusco. May it please the Court. In connection with the data processing limitation, of which we are... I want to talk about the function. Of course, it is a means plus function limitation. And it was construed by the Court as such. And in connection with that construction, the Court looked at what the structure would be to perform that function. And here, it's a program that is programmed to do certain things. And by the very nature of those sort of algorithms, it was programmed to create database tables. And with respect to that construction, looking at... There's nothing in the claims that requires database tables. But there is in the claims construction. Where exactly does it require database tables? Okay. Your Honor, with respect to the claims construction, the data processing means, the structure includes a computer that is programmed to segregate data by customer and record time, to edit and accumulate data to produce reports, to create database tables and additional records for storage, and to convert data at its equivalent. And in that context of the claims construction, of the very functional language we're talking about here, if I may point the Court to the Markman order, which has never been disputed in any way. As this Court recognized in its first appeal, there were no disputes in claims construction. On A441, when the Court was dealing with, do I need to look further at things dealing with the organizing function, the Court points out that the Court concludes that the Court's construction is outlined above, with the structure. Above, obvious, the need to interpret either the generating or the organizing functions any further. And then it added, one sentence removed, in addition, the Court did not necessarily construe the scope of those terms when it discussed the structure necessary for performing those functions. And in that vein, Your Honor, I'd like to take you back, if I may. Doesn't that just require a structure capable of doing this? It doesn't actually require that database tables be created. Your Honor, I believe that they have to be created here. I don't see that in a claim construction. So, it's a computer program to do this, but a computer program to create database tables and to convert data, it doesn't mean it actually has to be done. It just means the system has to be capable. And our system isn't capable of that at all. It doesn't generate any sort of database tables. We don't work on the basis of database tables with respect to any of this information. It comes from XML data. So, there is no capability. It's not done. There's no capability. But, if I may step you back for a moment to look at when this patent was filed and why it is so important that it be organized in an optimal manner like it is. It's because it was filed, apparently, back in 1989. And at that time, the world of PCs was, let's say, rudimentary. And the ability of PCs was very rudimentary. So, this patent teaches that we are going to preprocess everything we can on the back end so that it's organized optimally to be used, displayed, manipulated further on the front end of the client. And that's what was done. In order to really do that, as it's pointed out in the specification at a number of places, and I'll just refer to A58, column 10, 10-31, as well as in the background, A55, column 3, 57-63, this optimal of notion was put forth. And there's another reference in A58, column 9, to the database table in line 36-40. The importance of this was the processing capability of a PC was so weak at this time that we've got to do everything on the back end. And that includes getting this in the database table and getting it over there so that it can be then useful and manipulated with the processing capability in store, with the capabilities of the database. I struggled to some degree to determine what systems was the district court saying do not meet the organizing limitation. Your Honor, it was the EBC system. And here's what happens on the EBC system. There is a lattice operation, which takes information that's gathered from a switch. You know, every time you make a call, it creates a certain amount of information in a switch. That information is then transferred to lattice, which rates calls, adds costs and other things. And then that information is stored. That can be used in many operations for your regular phone bill. What EBC did is say, well, we can pull stuff off of what is stored by customer here and provide that information to a customer on a diskette or some other way. But it did it in terms of a couple of files, file pairs really. .txt, a text file, which is just data. There's no schema in it at all. It's just comma-delimited data. And a .fmt file, which is the format, of course. But even that, that's not a database in any way because the way that it works is if you have the client application at EBC, that client application on a PC sets up a database file. It's empty. Then, if you have that set up, you can populate it with the data in the .txt file with the help of the .fmt file. And so it's populated in the right places. But the .fmt file, what they have alleged is data processing means. It doesn't come from data processing means at all. It comes from something that's manually created and was sent out. So it has nothing to do with the alleged data processing means. So all we have is what they allege the data processing means is basically information. It's not really usable unless you can format it, put it in the right place, and then get it in a database table, which is something that's done in the client software application unconnected to the data processing. I don't understand why the claim requires that. Why is the .txt file not adequate to satisfy organizing or display, as the claim requires? You can display a .txt file. You can read it. And you'll find out that it's pretty as having it in a database table. But it seems to meet the limitation. Well, I don't think it meets the limitation. And certainly, there's been nothing to show that the data processing means of structure is existing in the EDC system at all. Well, something's producing the .txt file. It seems reasonable to think it's the data processing means. But the structure of the data processing means required by the court's instruction, which is contested, as you pointed out, has to have the capability, at least, to create a database table. But I don't see that. See, that's the thing. I've been texting back and forth with my law clerk because I understood your rhetoric to actually say it must create a database table. I didn't understand you to be focusing on capability. And I'd like you to point me to evidence in the record that clearly establishes that your system, your database table, is not even capable of doing it. Do you have the ability to do that? Because you represented it to me a minute ago. Our database table is not even capable of doing this. Well, there's certainly no evidence in the record to indicate it is capable. Yeah, but isn't every computer capable of generating a database table? Only if it's programmed appropriately. No, it has to be programmed appropriately. Because if you take that tab, Your Honor, then I think you're going down the road that now all we need is a general-purpose computer for a 112.6 limitation because it could be programmed. That's not the requirement. 112.6 says that it has to be a specially programmed computer to meet the means plus function limitation. So the fact that there is a computer cannot satisfy that, quote-unquote, capability. As I understand it, this is court's precedence in WMS gaming and aristocrat, those cases. And your view is that we are absolutely bound by this claim construction, that we can't conclude on our own that a database table is not required by the claim? Well, the claim construction certainly hasn't been challenged in that respect. Well, they certainly have challenged whether or not a database table is not required. No, I disagree with that. They said that what we have is a database table. As a matter of fact, in their opposition... But all the claim is requiring is display, right? Isn't Judge Moore right on point here that we don't find database table displays? It just says a display. I agree that the function here says that, but as the district court pointed out in its construction, that's constrained by the structure that is necessary to perform that function. No, but why would something have to be capable of creating database tables to be the right structure when that's not one of the functions that is necessary for that structure? Because what you find in the patent is only something that could be an algorithm like that. I mean, it's a means plus function claim. You can say the function could be done by many, many things, but it's what you find in the patent that defines what the algorithm for that is. Has this patent expired? Pardon me? You're on. Has this patent expired? Yes. I think I understood them to argue also at one point that the .txt file is, or could sexually be held to be a database table in and of itself. I think I understood them to argue that at one point. Why isn't that a question of fact? Because during the deposition of their expert, Dr. Grimes, he in fact said that the .txt file is not itself a database table. He only said that in a later affidavit here, and you cannot, under Seventh Circuit law, create a disputed fact as your own affidavit. I also need to point out, Your Honor, that the functional language is not just what. Wait, why can't you create the question of fact as your expert affidavit? After he gave the deposition? No. Why not? Why can't he clarify through affidavit his testimony? He didn't clarify. He just made a different statement. And I think that the Seventh Circuit law, we cite it in the brief. Did the court hold that in this case, that he was not going to consider the affidavit because it was in direct conflict with the earlier deposition and that under Seventh Circuit law that wasn't allowed? No. So as far as I know, he considered it, right? We don't know. It doesn't say one way or another. Right, but it was in evidence. It was certainly in evidence. So part of the record contained a statement by the expert that on its face would create a factual dispute. Create a dispute by saying conclusorily that it is something when he before testified it wasn't. And I don't think that meets this court's, Arthur Collins' requirements of something that has an explanation and is not merely conclusory. So I don't think it does create a genuine dispute of fact. Can you remind me, because I just don't have this record, I'm sure as well as you do, where might I be able to find that expert statement where he said it's not a database, that a CST file is not a database? Yeah, if you look at, it's around page 1486. Thank you. I think it has quite a long discussion there that doesn't include the schema. If I may also, Your Honor, Your Honor was pointing to the functional language. Well, the functional language is not merely dyslexic. It requires also storage and manipulation. But you didn't raise those issues. Well, well. So you're not going to raise them for the first time on appeal. Well, I think it's inherent in the fact that why we're saying you have to have a database table so that it can work on the PC side. Yes, but you moved for summary judgment and gave the opposing counsel notice that your, among other reasons for summary judgment, was it didn't organize or display. You never gave them notice that it didn't organize for storage or manipulation. So it would seem a bit unfair at this stage in the proceeding for us to hinge a decision on that. Well, we also, they also had a notice about that it couldn't, that on the database table issue that we raised as part of the data processing. They certainly had notice of that. They even tried to say that it was, it met that, those four requirements. I could be wrong, but just so you know, your appendix jumps, at least the one I have in my hand, from 1443 to 1620. So the expert testimony that you're suggesting is the linchpin of the database table argument. It's 1486, Your Honor. Correct. I'm telling you that page does not exist in my appendix. So just so you know. 1486? Yeah, it jumps from 1443 to 1620. There are no pages in between. Just so you know. You might want to supplement it to the court. Well, Your Honor, I apologize. I've given you the wrong number. 4753 is one issue, and the other one is 40, I'm sorry, there's 4276. 4753 is in the declaration where it says, well, it's technically not a database, but this is where they say the dispute was raised. But if you go back to 4276, that is this testimony of the same expert pointing it out. Thank you. Anything further? Thank you, Your Honor. Okay. Thank you very much. Mr. Wigman, you have almost four minutes. Thank you, Your Honor. I'd just like to clarify Dr. Grimes' testimony. The court looks at page 4272, I'm sorry, 4273. When Dr. Grimes says text file, the .txt file is a database table. And that's consistent with what's in his declaration. His declaration, he was very candid. He said technically, he used the word technically, it's only data for a database table, but persons skilled in the art would call it a database table. And that's what counts. The court says how a person skilled in the art would understand the claim that's been strewn by the court. And the term database table is in the court's construction of the structure that corresponds to the functions in the means-plus-functions term. It's not part of the function. It's part of the structure. Now, this is a computer-implemented function, so under WS Gaming and its progeny, the algorithm is the structure. So even though it's a computer, it's programmed to do various things, including create database tables, but that structure is not part of the function of the claim. And this court has stated on several occasions, including the JPW case that we cited in our brief, that it's improper to complaint the structure with the function. In interpreting a means-plus-function clause, first the court identifies the function, and then identifies the structure and the specification that corresponds to that function. So the tail doesn't wag the dog. The functional limitations inform the structure, not vice versa. So you can't read database tables into the format language, because the format language is organized into a format. That's the function. So the quest argument is improper, because it conflates the structure with the function. But ultimately, it begs the question, what does the district court mean by read database tables? Because that's a derivative term. It's not part of the original claim language. It's a so-called derivative term. So this court is free to clarify what the court meant. And the only database tables that are created in the back end of the patent system are these tables of data, the data that's accumulated by the table accumulation program. So it's not a database, per se. It's only tables. And that's what the text file is. It's tables of data. And according to Dr. Grimes, persons skilled in the art would call them database tables. So that's what counts. Now, if I can return, unless there are further questions on this point, I'd like to return to the PAC code issue, because I don't believe I answered Judge Moore's question properly when she asked about the constriction of our damages. Yes, we do need the PAC codes to have the full measure of damages. Merely basing the damages claim on the ability of customers to create a file on demand or through customization would not be sufficient. Or we unduly restrict our damages. The PAC codes are important. And there's at least a genuine issue of fact as to whether PAC codes meet the claim language. So summary judgment on that issue should not be affirmed. And I see my time is up.  That concludes our session.